# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Imperial Textiles Supplies Inc., ) | |
| ) | C.A. No. 6:09-cv-03103-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Hartford Fire Insurance Company, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on Plaintiff Imperial Textiles Supplies Inc.'s ("Plaintiff") Motion to Compel [Doc. # 51] pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. A hearing convened before the court on this motion on April 11, 2011. For the reasons stated herein, Plaintiff's motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a claim made by the Plaintiff on a policy of insurance issued by Hartford Fire Insurance Company ("Hartford") on a commercial building. Plaintiff alleges that the building, including its roof, sustained damage from an explosion at a nearby property on or about October 31, 2007. More specifically, Plaintiff alleges that a corrosive substance, magnesium hydroxide, was dispersed from the explosion and landed on the building's metal roof necessitating the replacement of the roof. Plaintiff made an insurance claim with Hartford and Hartford denied the claim. Plaintiff brought this action against Hatford alleging various causes of action, including: breach of contract, specific performance, and bad faith.

1

Currently before the court is Plaintiff's Motion to Compel production of certain documents withheld or redacted by Hartford on the grounds that such information was subject to attorney client privilege or that the information concerned irrelevant reserve information.[1] Upon agreement of the parties, the court conducted an *in camera* review of the withheld and non-redacted documents.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense- including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons who know of any discoverable matters." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. To be relevant, the discovery sought simply must be "'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). If a party fails to answer an interrogatory submitted pursuant to Rule 33 of the Federal Rules of Civil Procedure or fails to produce a requested document, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3).

---

[1] Plaintiff's motion raised issues concerning other information previously withheld by Hartford such as underwriting documents. The parties represented to the court during the hearing that all matters at issue in Plaintiff's motion had been resolved by agreement of the parties, except for the issues specifically addressed in this order.

2

# DISCUSSION

### A. Documents Withheld or Redacted Based on Attorney Client Privilege

Plaintiff seeks discovery of documents and statements made by or to Hartford's subrogation counsel, Laura Reed. Plaintiff argues that such communications are not subject to attorney client privilege. However, even if the communications are subject to privilege, Plaintiff further argues that it is entitled to discover the communications because it was owed a fiduciary duty from the subrogation counsel based on the nature of subrogation which implies that Plaintiff's interest was also being represented by the same counsel.

The Fourth Circuit has defined the attorney-client privilege in the following manner:

> The attorney-client privilege as traditionally recognized at common law and as now incorporated in the Federal Rules of Evidence, controls in all federal judicial proceedings. However, since the privilege "impedes [the] full and free discovery of the truth," and is "in derogation of the public's 'right to every man's evidence,'" it is not "favored" by federal courts. Accordingly the privilege is to be "'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" Consonant with this policy, the privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion of services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. While, as is seen, the primary requirement, one which has been often characterized as "the essence" of the privilege, is that the communication was intended to be confidential, or, to use the language of one recent decision, was intended "'to be held in the breast of [his] lawyer.'"

*In Re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (internal citations omitted); *see also Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 409-15 (D. Md. 2005); *United States v. Cohn*, 303 F. Supp. 2d 672, 679, 683-85 (D. Md. 2003). To apply the privilege, "the client's confidential communication must be for the *primary* purpose of soliciting legal, rather than business, advice. . . ." *North Carolina Electric Membership Corp. v.*

3

*Carolina Power & Light Co.*, 110 F.R.D. 511, 514 (M.D.N.C. 1986) (emphasis in original) (internal citations omitted). "A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *In Re Grand Jury*, 727 F.2d 1352 at 1356 (quoting *McCormick, Evidence* § 91 pp.187-88 (Cleary ed. 1972)).

Under South Carolina law, the elements of the attorney-client privilege are as follows: "(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communication relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. *State v. Doster*, 276 S.C. 647, 284 S.E.2d 218, 219-20 (1981) (quoting 8 *Wigmore, Evidence* § 2292 (McNaughton rev. 1961)).

Laura Reed was associated by Hartford to provide advice regarding the issue of subrogation. Based on the court's review of the documents, Hartford clearly sought legal advice from Ms. Reed in her capacity as an attorney. Therefore, the communications between Ms. Reed and Hartford are subject to attorney client privilege and are protected from disclosure.

However, Plaintiff argues that such communications should be disclosed to it based on an argument that it is owed a fiduciary duty from subrogation counsel and should be privy to any communications with counsel as a result of that duty. Although Plaintiff has provided the court with authority from other jurisdictions which indicates that an attorney hired by an insurer to represent the interest of the insured has a fiduciary duty to the insured, *see e.g. Port Auth. Of N.Y. v. Arcadian Corp.,* 1996 U.S. Dist. LEXIS 22038 (D.N.J. Sept. 30, 1996) (citing additional authorities), Plaintiff has provided no authority regarding the effect of that duty on the attorney client privilege when the insurer hires counsel to advise it of its legal interests under circumstances in which the insured was

4

never a participant. The fact that the legal advice touches on an issue that the insured may find beneficial does not transform the nature of the relationship between the insurance company and an attorney hired solely to advise the insurance company regarding the legal interests of the company only.

Because Plaintiff has not provided, and the court could not find, any authority allowing disclosure in this circumstance, the court must recognize the attorney client privilege asserted by Hartford and must, therefore, deny Plaintiff's efforts to seek the privileged information.

### B. Documents Withheld or Redacted Based on Classification as Reserve Information

Plaintiff also seeks to compel Hartford to produce unredacted documents withheld because they contain reserve information. Hartford objects to the production of reserve information on the basis that such information is irrelevant.

While most courts agree that reserve information is irrelevant in the context of a coverage dispute, the courts are split regarding whether reserve information is relevant in an action alleging bad faith. *See Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331 (N.D.W. Va. 2006) (finding individual loss reserve information was relevant to issues in third-party bad faith case because the loss reserves concerning the plaintiffs' individual claims would clearly be affected by the insurer's estimation of its insureds' potential liability, and by its belief about what coverage existed under its policies for such claims.); *Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 181, 193-94 (D.D.C. 1998) (reserve information relevant to the plaintiffs' third-party bad faith and breach of duty claims); *but see contra*, *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 244 F.R.D. 638 (D. Kan. 2007) (finding loss reserve information may be relevant and subject to production where the insured has asserted coverage and first-party bad faith claims against the insurer, because the measure of loss

5

reserves and the timing of their establishment could be relevant to the insurers' positions on liability, their investigations and coverage determinations); *North River Ins. Co. v. Greater New York Mutual Ins. Co.*, 872 F. Supp. 1411 (E.D. Pa. 1994) (determining that documentation of reserves was relevant, and, therefore, subject to discovery in action seeking to recover for bad faith failure to settle tort action within policy limits; amount set aside was germane to any analysis that insurer made of settlement value, and that information was relevant to whether insurer acted in bad faith during pretrial settlement negotiations).

The determination of the relevance of reserve information depends on the circumstances of each case, and is particularly influenced by whether the case presents a first-party or third-party claim of bad faith. South Carolina courts have found that a claim against an insurance company for bad faith requires an examination of the evidence before it at the time it denied the claim or, if the insurance company did not specifically deny the claim, the evidence it had before it at the time the suit was filed. *Howard v. State Farm Mut. Auto Ins. Co.*, 316 S.C. 445, 448, 450 S.E.2d 582, 584 (1994). The fact that the insurance company established a reserve may be probative on the issue of whether there is a potential for liability in considering a third-party bad faith claim, and thus reserve information may be relevant to the issue of bad faith. *See Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1154 (N.D. Ill. 2001) (citing *Am. Prot. Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 449-50 (E.D. Cal. 1991)). "On the other hand, in first-party insurance, the policy either provides coverage or does not. Thus, the potential for liability - and therefore reserve information - is irrelevant to a bad faith claim. Rather, in first-party insurance, the insurer's good faith is determined (1) by the manner and depth of its investigation, and (2) the

determination of whether there was a good faith factual or legal question as to whether the loss was covered." *Id*.

Hartford has produced its claim files which indicate the circumstances concerning its coverage determination. Primarily withheld from production is simply the specific amounts set for loss reverses. The matter at issue in this case focuses largely on Hartford's decision to deny coverage as opposed to any dispute over Hartford's determination of the amount of potential liability. Therefore, Plaintiffs have not demonstrated that the loss reserve information withheld by Hartford is relevant to any determination of Hartford's alleged bad faith in denying coverage.

Accordingly, the court denies Plaintiff's request to compel Hartford's production of reserve information.

## CONCLUSION

Based on the foregoing, and upon consideration of the record herein, Plaintiff's Motion to Compel [Doc. 51] is **DENIED**.

**IT IS SO ORDERED**.

s/ J. Michelle Childs
United States District Judge

May 5, 2011
Greenville, South Carolina

7